## CIRCUIT COURT OF THE CITY OF ROANOKE

Mosher Steel-Virginia, Inc.

     v.

Commonwealth of Virginia, *ex rel.*
Carol Amato, Commissioner
of Labor and Industry

March 29, 1988

Case No. CH86-413

By JUDGE ROY B. WILLETT

The primary issue before this Court is whether or not the Commissioner of Labor and Industry has established probable cause, based upon evidence of injuries and other related evidence, upon which this Court should issue an inspection order. During the course of this Opinion, I shall refer to the Plaintiff, Mosher Steel-Virginia, Inc., Division of Trinity Industries, also referred to as Trinity Industries, Inc., d/b/a Mosher Steel-Virginia, as "Mosher." I shall refer to Commonwealth of Virginia, *ex rel*, Carol Amato, Commissioner of Labor and Industry, as "Commonwealth." Carol Amato, Commissioner of Labor and Industry, and her predecessor in office, Eva Teig, are referred to as "The Commissioner."

This Cause evolved from an earlier action filed in 1984 by Mosher which challenged an inspection warrant obtained by the Commissioner. The Commissioner had obtained a warrant to enter and inspect Mosher's Roanoke City plant. The inspection warrant had been obtained as a

result of and based upon a programmed inspection schedule used by the Department of Labor and Industry. When the inspection warrant was served upon Mosher at its Roanoke City Plant, Mosher employees denied entry to the Commissioner's compliance officers who had served the warrant, and Mosher filed a Bill of Complaint in this Court challenging the constitutionality of the Virginia Department of Labor and Industry's plan for scheduling inspections. This Court, in the former action, presided over by another Judge, ruled that the inspection warrant was valid. The Virginia Supreme Court, on appeal taken by Mosher, reversed this Court's ruling, and quashed the aforesaid inspection warrant. The Virginia Supreme Court found that the application for inspection contained insufficient evidence to determine the neutrality of the Department of Labor and Industry's inspection plan, and based upon that finding, further found that the inspection warrant violated Mosher's Fourth Amendment right to be free from unreasonable search and seizure. *Mosher Steel-Virginia v. Teig*, 229 Va. 95, 327 S.E.2d 87 (1985).

The Virginia Department of Labor and Industry (hereinafter "Department") again sought to inspect Mosher's Roanoke plant in June, 1986, under the Department's programmed inspection plan. Officials at Mosher's Roanoke plant again refused entry to agents of the Department, and the Department obtained an inspection warrant from the now-retired Judge who presided over the original action. After this warrant was issued, but before it was executed, Mosher filed a Motion in this Court to Quash the Inspection Warrant, requesting Declaratory and Injunctive Relief and challenging the constitutionality of the programmed inspection plan. Mosher also sought discovery of documents and lists relating to the Department's plan. The undersigned heard the Motion, and based upon the Supreme Court's *Mosher v. Teig* decision, ruled that Mosher was entitled to the discovery sought within certain confines set by this Court. The Department thereupon withdrew the contested inspection warrant, to avoid production of the materials sought by Mosher, and filed a Cross-Bill in this Court seeking an inspection order based upon "traditional" probable cause to believe that violations of VOSH standards in Mosher's Roanoke plant have taken place. Mosher's declaratory judgment action was dismissed

due to its being moot, and the commissioner's Cross-Bill was set for trial; the Commissioner subsequently filed an Amended Cross-Bill upon which trial was held, and final evidence taken, on November 17, 1987.

Other proceedings have also taken place which bear on this Opinion only in that they provide part of the procedural background. Mosher sought to appeal the dismissal of its original Bill of Complaint to the Supreme Court of Virginia. That appeal was denied. Mosher also sought to enjoin this Court from hearing and acting on the Commissioner's Amended Cross-Bill. The Federal Court for the Western District of Virginia denied Mosher's Petition for Injunctive Relief. *Mosher Steel-Virginia, Inc. v. Amato*, No. 87-2093-R. Mosher's action based upon an alleged violation or violations of Section 42 U.S.C. Section 1983 were removed to the Federal District Court by the Commonwealth.

After the trial on November 17, 1987, this Court directed both parties to submit briefs dealing with four primary issues.

I. *Can the Department of Labor and Industry rely upon "First-Report-of-Injury" forms for injuries occurring more than six months prior to the filing of the original Cross-Bill?*

Section 40.1-49.4(3), Code of Virginia, as amended, provides that no citation may be issued under that Section after the expiration of six months following the occurrence of an alleged violation. Section 40.1-49.4(3), Code of Virginia, does not say that an inspection order cannot be based upon an alleged violation occurring more than six months earlier; rather, the statute precludes the Commonwealth from issuing a citation once the six-month period has run. This Court agrees that the Virginia Statute is patterned after the Federal Occupation Safety and Health Act, 29 U.S.C. Section 658(c), but does not find that this relationship renders violations more than six months old to be inadmissible in a cause such as the one at bar. The timeliness or staleness of reported and alleged violations determines the weight to be given such evidence, rather than its admissibility. Certainly patterns can form upon which inspection orders can be

based. Section 40.1-49.4(3), Code of Virginia, does not appear to this Court to bear upon whether the First-Report-of-Injury forms ("FRI's") used in Commonwealth's Amended Cross-Bill demonstrate probable cause to believe violations of VOSH standards occurred or are present in Mosher's Roanoke plant. A current inspection of Mosher's plant would not enable the Department to "cite" Mosher for conditions present and occurring at a time more than six months prior to the filing of the Cross-Bill, resulting in accidents by Mosher employees, but the Department may seek to inspect current conditions to determine if earlier, apparent violations, and the conditions causing those violations still exist. "Citations" as envisioned by Section 40.1-49.4, Code of Virginia, must then be based upon existing or recent violations, if any.

This Court agrees with the Commonwealth that this issue is not one of a statute of limitations, but of a pattern of conduct upon which probable cause can be determined. Whether or not the information contained in various FRI's is stale is a matter of the weight to be accorded such evidence.

It is the decision of this Court that the FRI's in question are admissible and will be considered as a basis for determining whether or not probable cause has been established by the Commonwealth.

II. *Should First-Report-of-Injury (FRI) forms, over six months old or not, be considered separately or along with one another and all the other circumstances presented to the court?*

This issue is necessarily dealt with in part in the discussion of the first issue, decided above. The Fourth Amendment bars search warrants issued on less than probable cause, and there is no question that time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of "facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause *at the time*." (Emphasis added.) *United States v. McCall*, 740 F.2d 1331 (4th Cir. 1984); *Sgro v. United States*, 287 U.S. 206 (1932). Further, the Supreme Court of the United States has held that administrative probable cause justifying an inspection

such as the one at hand must be based on "specific evidence of an *existing* violation." (Emphasis added). *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978). This Court agrees with Mosher when it reasons in its post-trial Brief that "one mashed finger a year for fifteen years would not show a pattern of likely violations" in Mosher's industry. This Court does not believe that each violation must be considered alone, without considering surrounding and related circumstances, or other violations. Past circumstances necessarily must be considered in determining whether a search warrant or inspection order shall issue from a judicial authority. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, decided in 1978 by the United States Supreme Court, one finds that "probable cause in the *criminal sense* is not required" in OSHA cases. (Emphasis added). While the Virginia Supreme Court has never considered the issue of "stale probable cause" as it relates to the totality of the circumstances as raised by the second issue presently discussed herein, it is clear that "civil probable cause," as envisioned as a basis for an industrial inspection warrant, has lesser requirements than "criminal probable cause." This is the only conclusion which can be drawn from a reasonable reading of *Marshall v. Barlow's, Inc., supra. Marshall v. Barlow's* further requires evidence sufficient to support "reasonable suspicion of violation." This Court feels that the circumstances presented to it demonstrate a plausible basis for believing that violations are likely to be found at the local, Mosher plant. *Marshall v. Horn Seed Co., Inc.*, 647 F.2d 96, 103 (10th Cir. 1981).

As noted by the Ninth Circuit Federal court, since *Marshall v. Barlow's* (cited above), Courts have applied a more relaxed standard for probable cause for administrative warrants than for criminal warrants. The delays relied upon by Mosher herein have been brought about by Mosher's exercising its right to litigate these issues, but Mosher cannot now be heard to rely upon the delay which its exercise of its right caused. Quoting from *Federal Casting Division, Chromalloy American Corporation v. Donovan*, 514 F. Supp. 617 (1981), *cert. denied*, 103 S. Ct. 69 (1982), involving a thirty-two-month-old complaint:

It seems clear that companies cannot be allowed to prevent inspections by litigating the validity

of a warrant through every available channel, and then when the warrant is upheld, avoid the inspection by litigating where a once-valid warrant has become stale. If that were the law and OSHA were required to obtain a second "fresh" warrant, nothing would prevent . . . additional years of litigation on the second warrant. To allow such a result would thwart the essential purposes of the Occupational Safety and Health Act of 1970 which was "to assure as far as possible every working man and woman in the nation safe and healthful working conditions.

This Court sees a close parallel between the case at bar and the factual finding evident in *Federal Casting Division*. In lay terms, "enough is enough."

I find that the testimony and other evidence at trial demonstrate a general pattern whereupon it is likely that violations of VOSH standards relating to protective equipment, material handling, and machine guardian is present.

III. *Has evidence been presented, based upon the FRI forms and testimony at trial, which reflects "specific evidence of existing violations"?*

As to the third issue, based upon the interrelated consideration of the issues set forth herein, this Court finds, for the reasons hereinabove set out, that the information from the FRI's and the testimony at trial reflect specific evidence of the likelihood of existing violations and finds probable cause for same upon which to base an order for inspection. This is as required in *Marshall v. Barlow's, Inc., supra*, and later cited cases. Having decided the First and Second Issues set forth above, it is clear to this Court that the threshold for administrative-inspection probable cause has been crossed by the Commonwealth through the Department and the Commissioner; the Court so adjudges and decrees.

IV. *If an Inspection Order is issued, based upon the evidence of specific violations of the Virginia Occupation Safety and Health (VOSH) standards, what is the proper scope of the Inspection Order?*

What is the proper scope of the inspection which the Court has decided to order? Having ruled as I have set forth above, the Court cannot now, and will not, limit the inspection to an investigation of the injury to Dennis Beveridge which occurred on March 17, 1987. (FRI Exhibit) I do not find that it is apparent that this proceeding is simply an attempt by the Commonwealth to conduct a general-schedule inspection without due concern for the rights set forth in *Mosher Steel-Virginia v. Teig*, as cited above. Earlier rulings by this Court sought strict compliance with the *Mosher Steel-Virginia v. Teig* decision of the Virginia Supreme Court. This Court refuses to strike the evidence proffered in support of the Commissioner's Amended Cross-Bill.

It is clear, having found probable cause present, and in accordance with *Burkhart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313 (7th Cir. 1980), that a limited inspection would not serve the remedial purposes of the VOSH Act. The litigation which has taken place the for last four years certainly has protected this Employer's (Mosher) interests; Mosher is and has been notified of the scope of the intrusion sought and has certainly been protected against "mere fishing expeditions." *Burkhart Randall Division of Textron, Inc. v. Marshall, Id.*, at 1324. Balancing the objective of employee safety with the other issues of administrative efficiency and the rights of employers, and in an effort to avoid disruption to the employer's business, it is clear to this court that full-scope inspection is proper in this Cause. I find that a broad-scope inspection of the entire workplace at Mosher's Roanoke plant is reasonable and proper under these circumstances. The Court finds further, as required in *Donovan v. Sarasota Concrete Company*, decided by the 11th Circuit Court of Appeals in 1982, 693 F.2d 1061 (11th Cir. 1982), that the full-scope inspection bears an appropriate relationship to the evidence before this Court. Further in *Donovan* at page 1069, the 11th Circuit Court of Appeals held that:

We do not maintain that a specific complaint may never form the basis of a full scope inspection. Rather, we conclude that when *nothing*

*more* is offered than a specific complaint relating to a localized condition, probable cause exists for a search to determine only whether the complaint is valid. Under other circumstances, it is conceivable that a specific violation plus a past pattern of violations may be probable cause for a full scope inspection. In addition, a specific complaint may allege a violation which permeates the workplace so that a full scope inspection is reasonable related to the complaint.

The evidence before this Court presents a reasonable basis for believing "that the deleterious conditions may also be present in other portions of the facility." *Donovan v. Fall River Foundry Company, Inc.*, 712 F.2d 1103, 1108 (7th Cir. 1983).

This Court does not believe that the Commissioner is motivated by a desire to harass Mosher; the Court finds that the nature of Mosher's business and the evidence presented herein qualify it for a full inspection. Based upon the factors set forth in *In re: Inspection of the Workplace Located at 526 Catalan Street, St. Louis, Missouri [Carondelet Coke Corporation]*, 741 F.2d 172 (8th Cir. 1984) which dealt with harassment, hazardous business, repetition of inspection, OSHA duties under the OSHA Act, and the need for wall-to-wall inspection, this Court, in drawing from the requirements found in that case, and the evidence before this Court in this cause, finds that a wall-to-wall inspection is clearly reasonable and proper.

Having spent a great deal of time reviewing the evidence and authorities presented to me, and having given all of that evidence and all the memoranda full and complete consideration, it is the decision of this Court that the Department of Labor and Industry of the Commonwealth of Virginia shall be allowed to inspect all manufacturing areas of Mosher Steel-Virginia's Roanoke Plant, along with all records which Mosher is required to maintain by the Occupational Safety and Health Act of 1970, as well as Mosher's Hazard Communication Plan.

This opinion is timely inasmuch as it is consistent with the present policy of the United States Congress and Administration, which are in the process of requiring

more on-site, workplace inspections, such as the one to be ordered by this Court.

The Court directs John B. Purcell, Jr., Assistant Attorney General, to the Honorable Mary Sue Terry, Attorney General, to draft an Inspection Order and Decree consistent with the rulings made in this Opinion.